HARRIS v. P. KOENIG COAL CO.

1. NEGLIGENCE—EVIDENCE—COPY OF REPORT OF ACCIDENT ADMISSIBLE.

In an action for personal injuries caused by a collision between the automobile in which plaintiff was riding and defendant's truck, where it appeared that the original report of the accident made by the driver of the truck to defendant had been sent out of its office, a copy there retained was admissible in evidence to show the identity of the driver and the truck.

2. SAME—TRIAL—CURING ERROR.

Although defendant's objection to the admission of the copy of the report brought out the fact that the original had been sent to the claim department of an insurance company, it cannot be said to be reversible error, in view

of the fact that the court limited its use to the purpose for which it was wanted and struck out the testimony referring to the insurance company.

3. SAME—TRIAL—ARGUMENT OF COUNSEL—CURING ERROR.
    If a remark by plaintiff's counsel, in his argument, referring to an insurance adjuster preventing a witness from coming into the court room was improper, *held*, corrected by the trial judge.

4. SAME—INSTRUCTIONS.
    An instruction that "All persons all the time cannot be what are called 'road hogs' because they get there first, or because there happen to be certain conditions all the time," *held*, not error, in connection with instructions preceding and following, and in view of the fact that it applied as well to the driver of plaintiff's car as to defendant's driver.

5. SAME—TRIAL—INSTRUCTIONS.
    Utterances of the circuit judge through which ran an apparent vein of raillery of counsel for the vigor exhibited in the trial, with a playful reference to inability to reach him for lack of subserviency to the wishes of the court, coupled with the serious admonition to the jury to decide the case according to the evidence, *held*, not reversible error.

Error to Wayne; Hunt (Ormond F.), J. Submitted June 15, 1923. (Docket No. 11.) Decided July 19, 1923.

Case by Lillian P. Harris against the P. Koenig Coal Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Vandeveer & Foster*, for appellant.

*Homer H. Quay* and *Benjamin & Betzoldt*, for appellee.

WIEST, C. J. While riding in an automobile, driven by her brother, going south on Second avenue in the city of Detroit, plaintiff claims the automobile was

struck and overturned by a truck belonging to defendant, being driven east on Putnam avenue at the intersection of Second and Putnam avenues, and she received injuries.   She claims the driver of the truck was guilty of negligence in speeding up when he saw the car approaching the intersection and noticed that his truck would likely reach the intersection at the same time, instead of giving the automobile the right of way, as provided by ordinance of the city of Detroit for vehicles being driven over a north and south street.   Other negligence is charged but need not be mentioned.   Defendant claims there was no collision and that the automobile overturned by reason of the speed at which it was being driven when it was suddenly turned to go east on Putnam avenue.   As sometimes happens there was testimony in support of the claims of both parties.   The issue of fact so raised was submitted to the jury and the result was a verdict for plaintiff.

At the trial plaintiff encountered some difficulty in showing the ownership of the truck by defendant and its operation at the time of the accident by its employee, and was compelled to seek such evidence in the office of defendant, and to that end called defendant's office manager, and found a report of the accident had been made by the driver, but the original thereof had been mailed to Homer Warren & Company.   Upon objection being made to the use of the copy of the report of the driver, retained in the office of defendant, plaintiff called Mr. Grow, who was connected with Homer Warren & Company, and he testified he could not find the report wanted and being asked: "What do you do with them?" answered: "They are sent to the claim department of the Ocean Insurance Company."

Upon objection the trial judge stated:

"I will strike out the later part of the answer. He sends them out of the office."

Upon further evidence tending to show the original report was beyond the reach of plaintiff, the court admitted such part of the copy in defendant's hands as gave the name of the driver and identified the truck and fixed the time of the accident reported.

It is strenuously insisted that this got before the jury the fact of accident insurance carried by defendant and constituted reversible error. Defendant, of course, was well within its rights in insisting on strict proof that the accident was occasioned by its truck while being operated by one of its employees, but when the evidence thereof lay in its office, and its objection drove plaintiff to go there for such proof, and further objection sent plaintiff on a search for the original of the report because the same had been sent out from defendant's office, defendant stood a fair chance of being "hoisted by its own petard." The objection seems to have occasioned some back-fire.

The objection to the use of the copy of the report, to merely show the identity of the driver and truck, such copy being retained by defendant in its office, went beyond defendant's right of objection, for the copy found in its hands was admissible, and defendant should not have insisted upon plaintiff's running down the original. The run for the report, as defendant must have known it would, headed at once toward the insurance company because it had been sent there by defendant, and it was impossible to keep mention of its whereabouts out of the case. The report, or the copy of the same retained by defendant, was competent evidence for the purpose it was wanted, and the trial judge was careful to keep the evidence within such purpose and, under the circumstances here disclosed, we cannot hold there was reversible error. But, it is claimed, the subject of in-

surance was brought up by plaintiff's attorney in the following part of his argument to the jury:

"As a further evidence of the fairness of this defendant, of the fairness of their defense, yesterday morning when I saw Mr. Holycross out in the hall when I was trying to prove agency, I asked him to come into the court room and was bringing him into the court room to swear him and Mr. Bash, the attorney and adjuster, grabbed Holycross and held him back and would not let him come in here.

"*Mr. Vandeveer:* I do not think that is proper. This man was excluded under the order of the court—

"*Mr. Benjamin:* I have a right to argue the—

"*Mr. Vandeveer:* Wait a minute.     I want a ruling of the court upon that.

"*The Court:* Gentlemen of the jury, prejudice is not the thing to decide this case.     I charge you that so far as it now appears, I don't know that he was obliged to come in here because he asked him to come in—that is, Mr. Benjamin—

"*Mr. Vandeveer:* Yes.

"*The Court:* There was an order of the court excluding the witnesses from the room until called.

"*Mr. Vandeveer:* I want the record to disclose that I am objecting to this line of argument.     I think it is unfair and prejudicial."

Conceding the remarks of counsel to have been improper, we feel he was set right and any possible error was corrected then and there by the trial judge.

Defendant complains of the following part of the court's instruction to the jury:

"All persons all the time cannot be what are called 'road hogs' because they get there first, or because there happen to be certain conditions all the time."

This part of the charge was preceded by a very full statement of the law of the road, including the following:

"If plaintiff's vehicle arrived first, it had the right-of-way; if the truck arrived first, it had the right-of-

way.   You are to determine, then, which had the right to traverse that area as you may find the fact to be under the law as I have given it to you.   *   *   *

"Streets are public highways for the use, not only of vehicles, but of pedestrians, and nobody has an exclusive right to the streets."

The instruction was immediately followed by this:

"All drivers of automobiles must exercise due care and caution, and they cannot run into anybody recklessly, purposely or wrongfully simply because they technically have the right-of-way."

We think the instruction complained of applied as well to the driver of the car plaintiff was riding in as to defendant's driver, depending, of course, upon the view the jury took of the claims of the parties.

Defendant claims there was error in the court saying to the jury in the course of the charge:

"There has been a great deal more than I wish was said about unfairness, etc., but perhaps that ought to be charged up, as counsel alleged, to him.   We cannot fine him for contempt of court even if he did what neither the court nor you would approve of. Neither is the defendant assessed damages because it did not  select some other counsel who would have been more subservient to the wishes and desires of the court and jury.   All these questions have a certain bearing, namely, weighing of testimony.   That is what finally governs, weighing of testimony from the stand."

Immediately preceding this part of the charge the jury had been instructed:

"There is a whole lot of things that occur in a trial that tend to arouse antipathy or sympathy, or there may be some other reason that might tend to swerve your verdict, but you took an oath that you would decide it solely and alone from the testimony."

Counsel claim that:

"Such remarks, and observations and criticisms on the part of the court were unfortunate, harsh and un-

just, and created prejudice and constituted reversible error."

Our attention is directed to several cases relative to improper remarks made by trial judges. The record does not disclose the circumstances evidently in the mind of the trial judge as indicated by his statement.

Cold print carries none of the surroundings or circumstances of recorded utterances. The sting of words is in their employment, and necessarily the occasion of their use, and this takes in also the manner of their utterance, whether light and playful, or denunciatory. Judges are human; some have a sense of humor, and while they must well weigh their judicial utterances, what they say must not be considered, on review, wholly divorced from the accompanying occasion and surrounding circumstances. There runs through the utterances complained of an apparent vein of raillery of counsel for the vigor exhibited in the trial, with a playful reference to inability to reach him for lack of subserviency to the wishes of the court, coupled with the serious admonition to the jury to decide the case according to the evidence. We cannot say that this portion of the charge led to a miscarriage of justice. The issues were clear cut and the verdict shows the jury accepted plaintiff's version of the accident and rejected defendant's.

There was no error in refusing to direct a verdict for defendant at the close of the case. We cannot hold that the verdict rendered was excessive.

The judgment is affirmed, with costs to plaintiff.

MCDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred. FELLOWS and STEERE, JJ., did not sit.